**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 24, 2013**

# In the Court of Appeals of Georgia

A13A0483. FIRST OPTION MORTGAGE, LLC v. S & S
      FINANCIAL MORTGAGE CORPORATION.

ANDREWS, Presiding Judge.

First Option Mortgage, LLC ("First Option"), filed an application to vacate an interim arbitration award entered in favor of S & S Financial Mortgage Corporation ("S & S") in the Superior Court of Gwinnett County. S & S thereafter filed its cross-petition and motion for confirmation of the award. The trial court confirmed the interim arbitration award and entered judgment. First Option appeals, contending that the interim award was not subject to confirmation because (a) it was not a final determination severable from the merits of S & S's breach of contract claim and its defenses, and (b) it was entered "manifestly and consciously [in disregard of] Georgia law with regard to burdens of proof and set-off." We disagree and affirm.

"In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous." (Citation and punctuation omitted.) *Yates v. CACV of Colorado*, 303 Ga. App. 425 (693 SE2d 629) (2010).

The instant arbitration arises out of the transfer of Stefen Shibley's interest in Lenox Financial Mortgage, LLC ("Lenox"), to First Option. In exchange for Shibley's interest in Lenox, First Option agreed to pay Shibley to provide general management services to Lenox's former branch locations in Buckhead. The agreement of the parties (the "Agreement") was executed on December 29, 2010 by Shibley, as President of S & S, and by Tim Burford as Managing Partner and CEO of First Option.

Among other provisions, the Agreement contained a broad arbitration clause in which the parties expressly agreed that Commercial Arbitration Rules ("Arbitration Rules") of the American Arbitration Association ("AAA") would govern as follows:

> *Resolution by Arbitration*. If the Parties are unable to resolve the Dispute within the above described period or through mediation as provided above, then the Parties shall enter into binding arbitration as set forth herein. Any Dispute shall be resolved by binding arbitration in Atlanta, Georgia, pursuant to the Commercial Arbitration Rules

("Rules") of the [AAA]. The arbitration tribunal shall consist of a sole neutral arbitrator appointed by the AAA pursuant to the Rules.

Further , the parties agreed that any award rendered by the arbitrator would be final and subject to entry of a final judgment thereon by "any court having jurisdiction over the Party."

The Agreement required First Option to make three types of payments to S & S: management fees, equity consideration payments, and profit consideration payments. The amount of the foregoing payments turned on performance benchmarks; however, the minimum monthly management fee due S & S from First Option was not so limited, such fee as payable only "in accordance with [First Option's] policy for the scheduling of salary payments to employees as in effect from time to time." Further, the Agreement obligated First Option to continue such payments throughout the entire five-year term of the Agreement unless it terminated the Agreement for cause[1] or S & S terminated the Agreement without good reason.[2]

---

[1] The Agreement defined "Cause" as any of the following events:

(a) [S & S] or any of its Affiliates is convicted of or pleads guilty to any felony or any act of fraud, misappropriation or embezzlement; and

(b) [S & S] or any of its Affiliates engages in gross and willful

3

On April 22, 2011, First Option suspended S & S with pay for a period of one week while it addressed allegations that S & S employees under Shibley's supervision had been allowed to consume alcohol on company premises. Two days earlier First Option had given S & S notice of its dissatisfaction with S & S's performance of the services it was required to provide under the Agreement. On May 17, 2011, S & S terminated the Agreement for good reason alleging, among other things, that First Option had breached the Agreement by refusing to pay the management fee, by relocating the Buckhead branch locations to its call center without its prior written consent, and by improperly suspending S & S. Later the same day, First Option

> misconduct during the Term that demonstrably has a material adverse effect on, or results in a material adverse change in Company, monetarily or otherwise.
>
> For purposes of this Agreement, an act, or a failure to act, shall not be deemed willful or intentional unless it is done, or omitted to be done, by [S & S] in bad faith or without a reasonable belief that such action or omission was in the best interest of [First Option]. Failure to meet performance standards or objectives, by itself, does not constitute 'Cause.'

[2] The Agreement defined "'Good Reason' [as] a material breach of this Agreement by [First Option] that is not cured within fourteen (14) business days after notice of such breach is given to [First Option] by [S & S]."

4

terminated the Agreement for cause asserting that S & S had not pointed to reasons sufficient to terminate the Agreement for good reason.

On January 12, 2012, S & S filed a statement of claim against First Option with AAA under the arbitration provisions of the Agreement, alleging breach of contract and fraud. First Option answered and counterclaimed on similar grounds. S & S filed its motion for interim relief seeking its minimum management fee under the Agreement on May 16, 2012. Such motion sought interim relief under the Agreement of $772,250 ($25,750 for the first two quarters of the Agreement[3] and $12,875 for every month thereafter). Following a telephonic hearing, the arbitrator granted S & S's request in part in the amount of "$151,000 less the amount that First Option . . . paid in Management Fees . . . during the first two quarters of 2011[,] . . . $12,875 per month beginning in July 2011 and continuing until further order of the Arbitrator . . . [,] and . . . interest at the statutory rate." Thereafter, First Option moved for clarification and modification of the interim award, which motion the arbitrator denied sub silentio stating that "[i]t was not my intention that the Ruling on the Motion for Interim Relief constitute a final, dispositive Ruling on the breach of contract claim filed by [S & S]. That issue remains open for consideration later in the

_____

[3] The Agreement was effective on December 29, 2010.

case." The trial court's confirmation of the interim award followed on September 4, 2012.

1. First Option contends that the trial court erred in confirming the interim award, arguing that it was a nonfinal determination severable from the merits of S & S's breach of contract claim and its counterclaim and defenses, among them the defense of set-off. Asserting that the issue is one of first impression, First Option asserts that such an arbitration award is not subject to confirmation because it does not finally and definitely dispose of a claim separate and independent of its alleged liability on S & S's breach of contract claim. We are not persuaded.

Georgia law holds that interim arbitration awards may be confirmed, even awards for payment prior to application of a set-off defense. *Southwire Company, NSA v. American Arbitration Assn.*, 248 Ga. App. 226, 228 (3) (545 SE2d 681) (2001). There, Southwire withheld more than $500,000 from Pamas & Company, Inc. as a set-off from contract payments allegedly due Pamas under the contract at issue. After conducting a preliminary hearing, the arbitration panel awarded Pamas $253,809 in damages as interim relief. "Southwire argues that the arbitrators' grant of interim relief contravened a clause in the parties' contract stating that monies due from Southwire would be subject to deduction for set-off or counterclaim arising out

6

of any contract between the parties." Id. at 228-229. The trial court held that "no ground for vacation of the award" had been established because the contract of the parties required Southwire to set forth in writing its reasons for withholding the money at issue as a condition precedent to exercising its right to a set-off which Southwire had failed to do. Id. While the foregoing did not resolve the dispute of the parties which remained pending, it did finally determine the sum due Pamas under the contract during the pendency of the arbitration and any subsequent proceedings with respect to the award. Id.

Here, unlike *Southwire*, the Agreement does not include any clause authorizing First Option a right of set-off. However, the Agreement plainly requires that First Option pay S & S its minimum monthly management fee for the five-year term of the Agreement, absent First Option's termination of the contract for cause. The conflicting substantive claims of the parties remain to be determined. Absent that determination, the Agreement[4] and the arbitrator's interpretation thereof are final to

---

[4] By paragraph 9 of the Agreement, First Option specifically agreed

THAT ITS OBLIGATION TO PAY [S & S] THE TOTAL CONSIDERATION . . . SHALL SURVIVE ANY TERMINATION OR EXPIRATION OF THIS AGREEMENT; *PROVIDED, HOWEVER,* THAT [FIRST OPTION]'S OBLIGATION TO PAY [S & S] THE

7

protect the status quo of the parties in the interim. "An arbitrator has inherent power to fashion a remedy as long as the award draws its essence from the contract or statute." (Footnote and citation omitted.) *Greene v. Hundley*, 266 Ga. 592, 595 (468 SE2d 350) (1996). This the arbitrator did.

Accordingly, the trial court's confirmation of the interim award was not clearly erroneous. *Yates*, supra, 303 Ga. App. at 425.

2. Neither did the trial court err in confirming the interim award of the arbitrator as not in manifest disregard of Georgia law. First Option argues that the arbitrator disregarded the law by shifting S & S's burden of proof on its breach of contract claim to First Option and by not allowing First Option any set-off against S & S's breach of contract damages.

---

MANAGEMENT FEE . . . SHALL TERMINATE UPON (A) [FIRST OPTION] TERMINATING THIS AGREEMENT FOR CAUSE, OR (B) [S & S] TERMINATING THIS AGREEMENT WITHOUT GOOD REASON. . . ." (emphasis in original.) Further, paragraph 9 provided that the "CONTINUED OBLIGATION OF [FIRST OPTION] TO PAY THE MANAGEMENT FEE . . . WAS AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER [THE] AGREEMENT AND IN [S & S] ENTERING INTO [THE] AGREEMENT." (emphasis in original.)

8

At issue is the fifth ground for review of an arbitrator's award, OCGA § 9-9-13 (b) (5). In such regard, "an arbitrator's award may be vacated if it can be shown that the arbitrator manifestly disregarded the proper law applicable to the case before him. This disregard must be both evident and intentional. An arbitration board that incorrectly interprets the law has not manifestly disregarded it. It has simply made a legal mistake. To manifestly disregard the law, one must be conscious of the law and deliberately ignore it." (Citation and punctuation omitted.) *ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574) (2007).

Thus, "to prove that a manifest disregard of the law has occurred, a party wishing to have an arbitration award vacated must provide *evidence of record* that, not only was the correct law communicated to an arbitrator, but that the arbitrator intentionally and knowingly chose to ignore that law despite the fact that it was correct." (Emphasis supplied.) Id. Such evidence must be in the form of a transcript or findings of fact in the arbitrator's award. See, e.g., *Azordegan et al. v. Ebrahimi*, 311 Ga. App. 509 (1) (716 SE2d 528) (2011); *Ordner Constr. Co. v. Parkside Crossing, 300*, 276 Ga. App. 753, 754 (1) (624 SE2d 206) (2005).

Here, there is no transcript of the proceedings below or findings of fact in the award. Nor did First Option request such a transcript. First Option having failed to

9

carry its burden to establish by evidence of record the statutory ground of manifest disregard under OCGA § 9-9-13 (b) (5), there is nothing for this Court to review on appeal. *Humar Properties v. Prior Tire Enterprises*, 270 Ga. App. 306, 308 (605 SE2d 926) (2004). Under these circumstances, the trial court's confirmation of the interim award cannot be clearly erroneous. *Yates*, supra, 303 Ga. App. at 425. There is no evidence to find otherwise.

*Judgment affirmed. Dillard and McMillian, JJ., concur.*